[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In his complaint dated August 18, 1998, the plaintiff alleges that he as the landlord, and the defendant as the tenant, entered into a written lease agreement on July 26, 1996 for the property located at 3 Greenbrier Lane, Ridgefield, Connecticut. According to said lease agreement, the lease was to begin on August 1, 1996 and would terminate on July 31, 1997. Further, according to the terms of the written lease agreement, the monthly rental to be paid was $900 per month. The plaintiff further alleges that a security deposit was paid in the amount of $1800 and that whereas the defendant failed to pay any rent for the months of December, 1996 and January, 1997, her security deposit was utilized to cover those payments. The plaintiff further alleges that the defendant "then vacated the premises sometime during the month of January, 1997" in violation of the lease agreement." The plaintiff, it is alleged, through his diligent efforts and good faith, was able to secure a tenant for the period of one month to cover the monthly rental payment owed by the defendant and that despite his efforts the subject property remained vacant for the months CT Page 9409 of April and May of 1997.
The defendant answers by essentially admitting to the claims set forth in the complaint, however, denies that she failed to pay rent for the month of December, 1996, and admits thereafter that no rent was paid for the month of January, 1997. The defendant filed two special defenses, one of which alleged that the premises were contaminated with mold which affected her health, destroyed the premises, and created a foul odor. She alleges in that regard that the plaintiff failed to comply with the statutory obligations set forth in Connecticut General Statutes §47a-7,[1] i.e., to maintain the premises in a fit and habitable condition, and further, that the plaintiff failed to remedy the mold contamination within the requisite time pursuant to § 47a-12(a).[2]
As a second special defense, the defendant has alleged that the plaintiff failed to make reasonable efforts to rent the premises at a fair rental in mitigation of damages as required by Connecticut General Statutes § 47a-11a.[3]
The defendant further counterclaims against the plaintiff alleging that the $1800 security deposit was not returned to her in accordance with Connecticut General Statutes § 47a-21 (d)(2),[4] or to comply with the provisions of said section regarding notice as to why the security deposit was retained and is, as a result, claiming twice the amount of the security deposit or $3600.
From the evidence and testimony presented at trial, the Court does find that the defendant paid rent for the months of August, September, October, November, and December of 1996.[5] Her security deposit was used for the months of January and February, 1997. Another tenant was secured for only one month to cover the monthly rent of March, 1997 and, because the plaintiff paid both the first and last month's rent to the plaintiff at the inception of the lease, the rent for April of 1997 was paid as her last month's rent. It should be noted at this point that with regard to the rental received for March of 1997, although the plaintiff testified that he believed the rent received was $850, the defendant testified that the plaintiff's attorney sent her a letter indicating that the rent received was $925. In any event, that question seems to be moot as the plaintiff alleged in his complaint that the rent received through the efforts of the plaintiff for the month of March, 1997, was able to CT Page 9410 cover the monthly rental payment owed by the defendant.
The Court specifically finds that the defendant is not liable or responsible for any rent other than which has been paid, that rent being excused as a result of the property, being not in a fit and habitable condition in accordance with § 47a-7, and by the plaintiff failing to correct the condition pursuant to § 47a-12. Specifically, the Court finds from the testimony of both the plaintiff and the defendant, that the defendant notified the plaintiff in October of 1996 that there were water, rot and mold conditions that were affecting the defendant's health. The plaintiff acknowledged that his management company could not get there to effect the repairs within the fourteen day period and further related to the Court that he discussed this with the defendant during the months of November and December of 1996. Further, per the plaintiff, there were spongy areas in the floor resulting from rot to the floor. Repairs were ultimately made between January 25, 1997 and February 5, 1997 to the furnace room and living area (which areas adjoined each other). The plaintiff acknowledged that some of the flooring joists in those rooms had rotted and had to be replaced, together with some of the flooring in those rooms. The defendant testified that she advised the plaintiff that mold was also growing in cabinets which she had cleaned, but which, nevertheless, also accounted for the health problems she was encountering.
The plaintiff, in his testimony, acknowledged that there had been roof leaks in the past which he claimed were repaired before the defendant took occupancy, but acknowledged that the stain marks continued to remain on the walls. He further acknowledged that he had to replace the bathroom floor before the defendant moved in as it had "taken on a lot of water over the years." The defendant testified that she was experiencing an allergic reaction to the mold in the unit which caused her to vacate said unit. The defendant then produced photographs of the rotted flooring and personal property of hers with mold growing on it. The defendant further testified that the mold was found growing beneath the carpeting and on the flooring which ultimately had to be replaced.
The Court finds the testimony of the defendant credible on the issues of the condition of the unit and her resulting health problems. The plaintiff's credibility was compromised as a result of his testimony which was uncertain, and, in some cases, contradictory.
As to the defendant's counterclaim, the defendant never made it fully clear to the plaintiff, either orally or in writing, when she was terminating the lease agreement or abandoning the premises. Nothing was presented to the Court that would allow it to make such findings. As a matter of fact, the plaintiff testified that discussions with the CT Page 9411 defendant took place about her moving back into the premises after the repairs were made. The defendant made no claim for a return of her security deposit until her pleadings filed on October 8, 1998. She never requested a return of any rent paid subsequent to the time she claims to have abandoned the property. The plaintiff did have an obligation to advise the defendant, pursuant to Connecticut General Statutes § 47a-21
(d)(2) if he were "deducting for any damages suffered by such landlord by reason of such tenant's failure to comply with such tenant's obligations." That he did by advising the tenant that her security deposit was being used to satisfy unpaid rent. The defendant did not object to this and no claim was made, except in response to the complaint filed over one year later. The Court finds that the plaintiff satisfied his obligations to the defendant under § 47a-21 (d)(2) by his attorney's letter advising the defendant that her security deposit was being used to satisfy unpaid rent.
As a result of the above findings, the Court does conclude that the defendant was justified in abandoning the property and terminating her obligations under the lease. The testimony from both the plaintiff and defendant was sufficient, in fact uncontroverted, that the premises suffered from extensive and excessive moisture problems which resulted in structural and physical damage to the premises. It is reasonable to conclude therefrom that the mold condition alleged by the defendant did in fact exist and that the plaintiff, by his own admission, was not able to address the condition and have same repaired until several months later.
Once again, it appears from the testimony that the defendant did not make it clear to the plaintiff, either orally or in writing, specifically when she was abandoning the property and whether she was claiming a return of moneys paid by her to the plaintiff. There was no testimony that any such claim was made other than as was presented by the answer and counterclaim which, once again, was filed more than one year after the alleged breach.
As a result of the above findings, the Court does conclude and does hereby grant judgment for the defendant on the plaintiff's complaint, and judgment for the plaintiff on the defendant's cross complaint.
Resha, J.